The first case on the call of the docket for the November term, Wednesday, November 13, 2013 is in re James W. People, the state of Illinois versus James W. 114483 agenda number one may proceed. May it please the court, I am Assistant Attorney General Richard Hussack, counsel for the people of the state of Illinois. I urge the court to reverse the appellate court's judgment in this case because it interprets two provisions of the Mental Health and Mental Health Act. The first provision of the Mental Health and Mental Health Act is that the defendant should not be held by the normal deadline. The second provision of the Mental Health and Mental Health Act is that the defendant should not be held by the normal deadline. The second provision of the Mental Health and Mental Health Act is that the defendant should not be held by the normal deadline. The third provision of the Mental Health and Mental Health Act is that the defendant should not be held by the normal deadline. upon a proper interpretation of these two separate statutory provisions, both separately and taken together. And the people urged the court to reverse the appellate court and instead to hold either that the respondent forfeited his complaint about the trial delay by not invoking the circuit court or waived that delay by indicating his agreement to the rescheduled trial date, or to hold that the respondent's jury demand was untimely because he made it on the eve of the trial deadline after first having required a continuance of the case to accommodate his demand for independent examination so that his jury trial demand was not absolute but could be subject to reasonable conditions, including in this case the trial court's proposal that the trial date happen at a later time beyond the normal trial deadline. And finally, that the court rule that the remedy for noncompliance with that trial deadline under Section 3-800 of the Mental Health Code is not automatic nullification of the proceeding. In other words, to hold that Section 3-800 is not mandatory in the sense of the mandatory versus directory distinction or dichotomy. And by that, I don't mean that it's not an obligation that's binding on the trial court. It is. We don't dispute that. It's that the consequence for noncompliance is not to strip the court of authority to enter a valid commitment order at the end of the proceeding. Kennedy. Yes. According to the Respondent, the State's petition for leave to appeal failed to raise three issues that the State now raises in its brief, and that including the question of whether Respondent forfeited his objection to the 97 days appealing to object in the circuit court. So is the Respondent correct that the State has forfeited these issues? The Respondent is correct that two of the issues the Respondent identifies were not included in the people's petition for leave to appeal. The Respondent is incorrect when they suggest that the mandatory versus directory distinction, the remedy for noncompliance with Section 3-800, was not included in the PLA. The PLA specifically says, and I refer to it in our reply brief, but I'll just quote from page 8 of the PLA, that because the time frames in the mental health code are directory rather than mandatory, dismissal of a petition for involuntary commitment outside the statutory time frames should not dictate dismissal of the petition. I think the first word, dismissal, was intended to be failure to meet those time frames. The petition for leave to appeal repeatedly refers to this distinction between directory and mandatory, which relates to the remedy. But it is true, and we want to concede that the petition for leave to appeal prepared by the State's Appellate Prosecutor's Office did not specifically refer to the forfeiture issue with respect to the complaint about the delay in this case. Likewise, it did not specifically refer to the appellate court's construction of the time to make a jury demand in these cases. And I think one of the benefits of being the Supreme Court is that for purposes of establishing a coherent and uniform body of law, the Court can decide whether those omissions from the petition for leave to appeal should preclude the Court from deciding those issues or instead whether the Court believes that they should be decided. But the mandatory directory issue is brought right before the Court. There's no possible argument of forfeiture there. And we would urge the Court, not only because the people were the appellee in the appellate court, but also given the problems created by the appellate court's judgment in this case, we urge the Court to seriously consider addressing those two other issues. I mean, the troubling aspect of this case is that there are things that can be done while the case is still in the circuit court to remedy, ameliorate, and redress any claim of noncompliance with the trial deadline set by section 3-800. The old adage is that a stitch in time saves nine. The best time to cure that type of violation is when you can prevent further delay in the proceeding by bringing it to the circuit court's attention. And it brings, I think the effect of this case, the appellate court rejected the argument that Respondent agreed to the 97-day delay, noting that he was faced with, they could describe it as a Hobson's choice. Either he was going to forego his statutory right to ask for a jury or wait 97 days. I don't think that that's a fair characterization. We disagree with that, and we also submit that no deference is required to the appellate court's interpretation of the trial record. We have a written trial record. There was no issue raised in the circuit court at the time, so this Court can decide, as well as the appellate court, whether there was, in fact, a waiver, a known assent to noncompliance or departure from a claim right here. Mr. Goza, what did the appellate court mean then when it determined that at least some amount of delay was appropriate to accommodate the Respondent's request for a jury? I think what the appellate court was trying to do was distinguish other cases in which appellate courts had held that noncompliance with a trial deadline somehow doesn't constitute reversible error. And we're in this strange sort of framework of analysis where the appellate court is saying, well, prejudice being detained without a trial isn't prejudice that constitutes reversible error unless the prejudice is unreasonable. Well, I'm not sure I understand that analysis. And I think that going back to first principles, the key question on that point is, is Section 3-800 mandatory in the sense that it triggers automatic nullification, it's a per se reversal, it doesn't matter what happened once you fail to meet that deadline, the entire proceeding is a nullity, or instead that it's directory, in which circumstance the legislature would be assumed to have given the courts the typical responsibility to craft a remedy that fits the wrong. And in this case, if the wrong is the unreviewed detention of the respondent past the normal statutory deadline. And we, again, we concede the importance of the liberty interest at stake here. We concede that that is a statutory deadline. The question is, what should be the remedy? And if the court interprets that provision as being directory, then it gives the circuit courts the power to craft a remedy that matches that remedy. It is important to remember that this violation has no bearing on the ultimate outcome of the case. It is not something that affects the truth-finding function. It doesn't prejudice the Respondent's ability to be able to say at the end of the day, I am or am not a person subject to involuntary admission. And, in fact, in this case, because of the delay, he had argued extensively to the trial court that his condition had improved, and thus that he should not be found to be a person subject to involuntary admission. Counsel, let me ask you this question. Apparently, James W. was held at Chester for 7 years prior to this event, correct? I believe that's correct. From 03 to 10. So one would assume, then, that he's been brought back to this court every 180 days for another hearing. And I would also assume, since this court sits in Chester, Illinois, that most of the for these kind of hearings. Either that or the trials are sometimes, depending upon the judge, held at the facility. But, yes, that's correct. And so certainly for this court, a significant part of their docket are these hearings, I would assume. That is correct. So finally, how do we deal with the fact that apparently this court adopted a policy that these hearings would not take place all summer long? In other words, apparently from the trial court's comments, despite the language of the statute that these hearings have to be held within a certain amount of time and continuances going on for 15 days, this court has a policy of not doing juries for mental health all summer long. Doesn't that factor into our analysis? I would like to try and clarify the reason for the postponement in the jury. And it's not stated in the record, but my understanding is not that these cases are postponed on a regular basis for that period of time. Again, the statute prescribes the time period the court generally complies with that time period. We're not aware of any pattern or policy of disregarding that time period. But jury demands are somewhat unusual in these cases. It's an important statutory right. It's not a constitutional right. But it's an important statutory right. But it is rarely invoked. And in this case, the fact that the Respondent first said, I want an independent examination, then he said, after the first continuance, I want a jury trial, appears somewhat to be an effort to try and string along the case in a way that maybe he was hoping for a, you know, a, you know, salvation to come from the heavens. But the reason I believe that this court in this smaller county has jury trials scheduled for this type of proceeding only every three months is to accommodate the speedy trial schedule for criminal cases. And they can accommodate that speedy trial schedule whenever a criminal defendant makes a speedy trial demand by having veneers of juries come in and summoned every 90 days for these criminal cases. A jury demand in a involuntary commitment case is quite unusual. That said, if this court holds that when there is a jury demand and it is made in a I believe, to the side for a second, what constitutes a timely jury demand? And I've mentioned that in our briefs. If the court holds that the circuit court must then schedule a jury trial within, say, 15 days, which is what the Mental Health Code says essentially is the permissible time for one continuance, not at the Respondent's request, I believe, perhaps subject to checking with a clerk, that that is a reasonable time within which the would have to appear and schedule a trial. But they can't do it at the drop of a hat. And when you have a Respondent who, at the last possible moment, at the stroke of midnight, says, oh, by the way, I want a jury demand and I have to have it now or else I get a get-out-of-jail-free card or its equivalent, that can't be a proper interpretation of these provisions of the Mental Health Code put together. The appellate court's ruling here is essentially that the jury demand can be made up to the moment that the first witness is sworn or opening statements begin. Given the strict deadline that exists in these cases for conducting these trials, that cannot possibly be the relevant time period for setting the deadline to make a jury demand in these cases. And I think that this Court's Village of Park Forest case that the appellate court followed in the Brazelton decision, and we've discussed it in our brief, says, in essence, the fact that there is not a deadline in the statute for making a jury demand doesn't mean that there's no deadline. You can't roll the dice on a jury trial, I mean, on a bench trial, and then afterwards say, oh, by the way, I want a jury. There has to be some deadline. And the Court essentially is given the responsibility to set that deadline. And we think that the Brazelton case reaches a sensible accommodation to that by saying it must be a reasonable time after the case begins. And in these cases, the first hearing, which has to be within five days, is certainly a reasonable time. That would be a safe harbor time at which somebody could make a jury demand. And the appellate court, in essence, relies upon other cases in which a jury demand was made at that first hearing and says it's reasonable. But then it reads language from those cases, which we think is dictated to say, any time before the opening statements have begun and the first witness is called is reasonable. We disagree with that in light of the fact that it creates an inherent problem and it invites this type of one-two punch for a procedural loophole where a respondent first gets a continuance by asking for an independent examination and then at the eve of the trial deadline in these cases demands a jury trial, knowing that in most of the counties of this State that's impossible to accommodate. You can't summon a jury on 24-hour notice. And then if we're – since we're discussing an 180-day commitment, was the continuance for 97 days a reasonable one for the court to enter? I'm not going to take the position that as a matter of law, in the abstract, that is objectively a reasonable period of time. What I will say is that because the respondent himself triggered the delay, and if the court accepts the premise that his jury trial demand was late and the court then had discretion to impose conditions upon granting the jury trial, the respondent's statement – he volunteered the statement, I'll wait, establishes that at least in this case that amount of delay was reasonable. Especially where he did not say, wait a minute, can't we do something to move this along? Can't we have a special sitting of a jury? He didn't complain about that. He essentially said, I'm going nowhere, no way. So reasonableness in the abstract, I think, is a hard thing to decide. I would certainly say that in the normal case, a minimum continuance occasioned by the respondent, similar to what happens in speedy trial act cases of 15 days, would be a safe harbor definition of reasonable. But in this case, we believe it's reasonable in light of the respondent's own response to the court's indication that the next scheduled jury sitting for this category of case was going to be 90-plus days. The court has labored, I think, considerably to try and clarify some of the confusion, misunderstanding, or even disagreement among the lower courts about the distinction between mandatory and directory statutory provisions. We think that's an important clarification. And we submit that there are a lot of cases coming up through the pipeline to this court where that issue is going to continue to arise, including specifically with respect to the mental health code. And if the court does reach this issue, which is the one that was specifically included in the People's PLA regarding the distinction between mandatory and directory provisions of the statute, we submit that it is appropriate if the legislature doesn't say that the consequence of noncompliance with a statutory procedural requirement in an adjudicative proceeding is nullification. That if that procedural requirement goes to the heart of the truth-finding function, impliedly treating that requirement as mandatory may make sense. That's consistent with the court's precedent in election cases. If it affects the outcome, it's mandatory. If it doesn't affect the outcome, probably it's directory. The same thing should apply to adjudicative proceedings. And here, where you have a procedural requirement that doesn't bear upon the guilt or innocence determination or the commitment versus noncommitment determination, it is very strong medicine to say that the legislature impliedly intended to have automatic nullification be the necessary consequence of a violation, especially where there are plenty of alternative remedies that could be applied if they are sought in a timely fashion. Again, a stitch in time saves nine. You can't wait for the little tear in the fabric to become some giant rant and then say, well, just throw the thing away. When you have the opportunity to fix the problem in the first place and the problem is unrelated to the ultimate factual determination and the outcome of the case, we would suggest. You indicated when you're talking about fix the problem at the time, one of the, I guess a couple of the things you suggested. One was discharge pending the trial. Another one was giving him credit, I believe, for if you were found to be that he should be given credit against 180 days. With regard to your defense of the due process concerns, you say there is no prejudice. Is it part of the record or should it bear on our consideration of the due process question of whether the respondent is still involuntarily committed? I think it should. Again, the due process analysis is part of the traditional harmless error doctrine and it's civil cognate where the United States Supreme Court has said not every due process violation implicates the correctness of the result. It doesn't mean that there isn't a violation or there's no error. It just means that the error didn't have any effect upon the outcome and so the remedy should not be to nullify the final judgment in the case. Is it part of the record as to whether or not he's still involuntarily committed, part of this record? I don't believe that is in the record, although I understand that my adversary might be in a position to be able to advise the court on that matter as his counsel. And so if you have a requirement that does not go to the truth-finding function and the ultimate outcome of the case, and you can't show that type of prejudice, maybe a mandatory reading makes sense where that is the only meaningful remedy that will fulfill the statute's purposes. But that is not the case, nor has it been established that that's the case in this type of circumstance where what you have is a delay past the trial deadline and the appellate courts are struggling to say, well, a little bit of delay is okay because it was reasonable, therefore not prejudicial, even though I think everybody realizes that it must be prejudicial in the fundamental sense that somebody  But in those circumstances, there are other meaningful remedies. There are remedies that can be tailored to fit the wrong, and the rule the court should adopt, I think, can benefit from this analysis that focuses on whether the violation does in fact affect the outcome and whether there are alternative remedies that will fulfill the statutory purpose. Thank you, Your Honors. Counsel for the appellee. Good morning. May it please the court, counsel, I am Barbara Gopin, and I represent James W., the respondent appellee in this matter, and we respectfully urge that this court affirm the appellate court's finding that setting a jury trial 97 days after the My client's due process rights, Illinois precedent and policy. Ms. Gopin? Yes. Can we start with something that was brought up by Mr. Hussig at the tail end of his argument with respect to the mandatory directory situation? What is this court to do with the recent case law that it seems to indicate that when the word shall is used, but that same statute doesn't provide a consequence for noncompliance, that we found that to be directory rather than mandatory? Upon a brief review, because really they raised this directly in the reply and not in their petition, statutory requirements which are intended to protect a citizen by the disregard would generally affect them are considered mandatory. So upon the reading of this, it's whether it's shall if there's a consequence, or shall if the mandatoriness is meant to protect a citizen's rights. So in this case, you look at the legislative history of the code, it is to protect the respondent's rights and also to protect society, but it is to, one of the purposes of the code is to protect their rights through this process, through the denial of liberty. And one of the key parts of it is a prompt hearing, so we would argue that the shall, it should be considered mandatory because it's generally the delay in it, the failure to comply with it would generally affect in a disadvantaged way the average person being committed. If you would like further briefing on this, we can submit it later on this, but that's my understanding versus the directory versus mandatory nature of this. I would like to first do a brief discussion about the mental health code and then the state's defenses. Basically, the state concedes that due process and commitment is a massive curtailment of liberty because they have not committed any crime and they're denied their liberty. So due process requires a prompt hearing and the protections, of course, through the 14th Amendment. Other protections because of this due process requirement for a person being committed is a right to the independent evaluation and a right to be placed in the least restrictive environment. And because of the liberty interest in law, this court and others have said that the The mental health statutory scheme promotes this promptness of a hearing. And briefly, when a person gets committed, within 12 hours they receive a copy of the rights. Within 24 hours, the petition must be filed. Within five days, a hearing must be held. And continuances are limited to 15 days for the state and the court. And it must be noted 800B, where it does say the 15-day limit and the 611, which is the five business days, does not make a distinguishment between a bench trial or a jury trial or a petition for continuing commitment or the initial petition. Furthermore, part of the statutory provisions in the code is that after the initial one, it's 90 days and then another 90 days and 180 days. So the whole statutory scheme is to try to comply with the promptness element with the commitment. And the legislative intent was actually for a quick hearing. Under the mental health code, the Governor's Commission for Mental Health, which is considered the legislative history of this code, actually wanted even a quicker hearing, 48 hours, to address the lack of probable cause hearing. But the legislature decided that the five day was sufficient. Furthermore, just with the element of shall, the statute uses the mandatory shall. And because these provisions are to protect the rights of the respondent, we would strongly argue that they are mandatory. There's no case law that says they're directatory. And this would be a departure of this court's ruling in Barber H, that supports the respondent's rights. Furthermore, public policy supports a prompt hearing because it prevents indeterminate detentions. Basically, respondents are pretty vulnerable parties through this process. And the mental health code was enacted to protect their rights. Also, as May established, the purpose of the reexamination is to promote detention in the least restrictive environment to satisfy due process and to review it. Furthermore, there is a state interest into promoting and reviewing of this because it costs the state hundreds of dollars for each day a person is detained in a mental health hospital. So there is that fiscal policy with that. Ms. Colgan, I'm going to read you two sentences, rather lengthy, from Mr. Huzzock's reply brief. Okay. And I want you to tell me what's wrong with the sentences factually. And you'll know as soon as I read the first couple of words, it cannot be the law, why this should be the law. It reads, it cannot be the law that a person subject to an involuntary commitment petition on the ground that he is mentally ill and dangerous can delay the trial by successfully invoking multiple statutory rights until the case can no longer be tried before the deadline established by Section 3-800 of the Mental Health Code and then claim after losing a jury trial, he requested, that missing the deadline nullified the entire proceeding. And then he goes on to say, yet that is the position taken by a respondent here who makes no claim that the circuit court's failure to comply with the deadline in any way prejudice him with respect to the ultimate outcome of the case. So what's wrong with what he's saying there factually? And I know you dispute that you're saying it can be the law. So why can't it be the law? And is there anything wrong with what he indicated there happened below? Yes. Two issues. First is the prejudice argument. The person, him being there, as the Fifth District said in Michael H., there's a prejudice of being committed for a delay. So he really doesn't have an inducement to delay the proceedings because they're getting involuntarily medically treated at a psychiatric hospital and they have the delay of freedom. Furthermore, in a mental health hospital, they actually have more restriction of rights than in a jail. Like I've been there, they actually aren't sometimes even allowed pens and pencils, and it's also a dangerous place for him. James W. actually got hit in the eye and had a broken facial bone. So there is prejudice. He really, in I think the state, in a normal civil case, forfeiture is an issue or induced error. But in a mental health case, because the appeal is basically considered way after the time of the commitment, he does not gain any really material benefit by inducing error in this case. And furthermore, it's not him who chose the court date. It was the judge. The judge said, I can hear this in August. You know, there is a position of power where, because of the mental health code, the clients are induced, they're actually promoted to respect authority. If they challenge authority in the mental health system, they get actually just a red mark. So, you know, the court has a parentis parenti duty to ensure that their rights are protected. And in this case, I think what's troubled the Fifth District was that there was no substantial compliance with the promptness requirement. Justice Chapman was very clear. There was nothing on the record why they couldn't do it earlier than 97 days. It wasn't the client who chose the date. It would have been, this case would have been much more complex if it was set one or two weeks later, you know. Then it would be an issue of substantial compliance with the mental health code. Here, there wasn't even any indication that there had to be a compliance with the time frame. Are you indicating, then, if it had been within two weeks, it's not mandatory to have the trial within the 15-day period? Well, there is case law, Hanna E. and Lisa G.C., where short delays are considered as substantial compliance with the mental health code. This Court has acknowledged the importance of the procedures. And if the circuit courts are pretty, if there is substantial compliance, like, for example, someone didn't get actual notice, but they were there, or now the petition was filed one day late, there wasn't, you know, prejudice. Or in Hanna E., it was 42 days after the filing was the hearing, but it was short continuances to try to, it was a two-day commitment hearing. So practically speaking, the current system is very, actually addresses the needs of a mental health court, because it acknowledges in reality there are issues of substantial compliance. And this Court has acknowledged that waiver, or the refute, waiver is an actor of the forfeiture of the argument if there's substantial compliance with the code and the time frames. And here, there was not the substantial compliance with the code. I might understand your argument. You mentioned that the respondent and others like him are encouraged to be respectful of authority. Right. Are you saying that that somehow takes away, for example, the trial judge here said, okay, we're going to have to have the jury trial in August. And I believe the response by the respondent was, yeah, I'll wait. Is that part of this respect that would take waiver off the table because they're told to respect authority? There's no obligation on the part of the respondent to say, well, I want it in 15 days, judge? Well, I think two things. Respondents are vulnerable parties, so they're very limited. They're not sophisticated consumers. I wouldn't go a blanket case. It would go case by case. But this case, it's not an induced error. He did not benefit from establishing this. And there was really no substantial compliance in this issue. One fast thing about remedy. These cases are very important. I handle the Chester appeals. In Randolph County, they actually used to waive the commitment hearings and the involuntary medication hearings without giving them a knowing involuntary waiver of the consequences of agreeing to the order and what are the alternatives, which happened here. There was no disclosure. There was no issue of whether he had the capacity to waive. Since then, the 5th District has reversed those cases, and now they have a proper hearings. Furthermore, there have been issues where they used to do 16 medications ordered an involuntary commitment hearing, involuntary medication. Since the reversal of that, they've been more limited. So the reversal, it's a public interest exception to muteness. The reversal of this sends the message to the circuit court that they have to comply with the mental health code. And Chester is not a, Randolph County is not an unsophisticated place with this. They have mental health courts every week. And there is a benefit for a jury trial for these clients because they get a more robust hearing. I was there, and it used to be they had six hearings in a half an hour. So the clients knew if they had a jury hearing, they would have a longer hearing in this part. Furthermore, I'm sorry, I'm quick, but I'm addressing these issues. In a mental health case, they don't get credit for time served, which is a distinction between the criminal report. So you've indicated with regard to prejudice that I think that there was no prejudice in the trial itself or the outcome. The prejudice results from his being held in 97 days and not getting credit for that time at the end, is that correct? Right, and the prejudice of being detained. He could have been also maybe in a better mental state earlier for money. Is it important then in our analysis that we know whether he is still involuntarily committed? That is, would it have made any difference other than it would delay the time for filing another petition? I think the key part of this is I think the State is trying to shift the outcome. Okay, well, he got committed, so the procedural process does not, is not important. But in this case, it's the ones who are the most mentally ill are the most entitled. And that's why in Barber H. and Speltz. But you're not going to answer my question. Oh, I'm sorry. The question is, is it important in our analysis that we know, and does the record show whether he is still involuntarily committed at this date? I think not, because it's the isolated, it was the error with this. He has been discharged now from Chicago Reed. He's gone better. Thank you. But there is no credit for time served. Thank you. Thank you. May it please the Court. I think everybody is somewhat troubled by this case. It presents difficult facts. It presents multiple difficult issues of law. And I don't have the lack of humility to predict exactly which issues the Court will address and how it's going to rule on those. But I do understand the importance of the liberty, interest, and stake. And we do want to emphasize that the State is not taking the position that this trial deadline is somehow a meaningless piece of paper. Our position is that if the Court rules that that is a directory obligation, that that is a statutory duty that the circuit courts are going to be required to comply with. But it doesn't mean that the remedy is automatic nullification. Reversal is not the necessary message as an automatic remedy in the event of noncompliance to tell the circuit courts that this is what's necessary to fulfill the purpose of that statute. A directory reading would be equally valid and I think more appropriately attributed to the General Assembly given the nature of the statute. The General Assembly knows how to make automatic nullification explicit in a statute. They've done that with the Speedy Trial Act. They've done that in the Mental Health Code itself, which repeatedly says for certain circumstances, if a deadline is not met, that the respondent shall be discharged. So it is not necessary to have a mandatory reading of the statute to get the message across to the circuit courts. What the remedy should be, I think, depends to a certain extent upon when it is raised when the problem is invoked. There is a suggestion that the respondents in these cases don't have any incentive to delay the proceedings or to forego complaining about objections. It seems to me that if the court treats this statute as being mandatory, they have every incentive not to complain about it while the problem can best be addressed. The injury that the statute is intended to avoid can most successfully and effectively be fulfilled by a timely objection. And there is no argument that that's not the case here, that if the respondent had said, Your Honor, I don't think 97 days is reasonable. It's sort of like going into a restaurant without a reservation and the maitre d' says, well, you have a table next to the kitchen. I usually say, well, do you have another better table because there's another restaurant, you know, down the street? This person didn't have another restaurant down the street to go to, but he did have counsel. And to the extent that he sat on his hands, didn't object, waited for the jury trial and then only then said, oh, that was all for naught. It's a big do-over automatic reversal. It can't be the appropriate remedy. Excuse me. I just wanted to get the factual background straight in my mind. And forgive me if I should know this and I've forgotten, but May 19th when this request was made and the judge said, we don't have any trial dates until, was it August? August, yes. The respondent was represented. The people were not in court on that date. Well, the people, the state's attorney was there and the respondent had counsel. Okay. And you're saying, looking back now, that was impossible to make it work to comply. Does the state not have an obligation to say, judge, we've got to get this scheduled earlier at that time when it set out X number? You're telling us that the respondent shouldn't have taken that table at the restaurant. What about the state saying, hey, you know, this isn't going to work either from our point of view? I have difficulty imposing upon the prosecutor the responsibility to ensure the appropriate representation of the other side. And I understand that government attorneys representing the people have an ethical obligation to ensure that justice is done. But there are limits to that. And I think plain error is sort of the boundary line that is often drawn to distinguish between situations in which the prosecutor has some sort of responsibility to say, hey, wait a minute. Let's not create a reversible error situation here. Let's try and fix it. In retrospect, it's hard to know whether the prosecutor or even the court should have said, hey, if you don't like that, let's see what we can do. But there is a cost incurred in having a clerk set up a special setting of a jury. And to impose upon the court the obligation to do that, in hindsight, I don't know is fair. If the court says in the future you better get it done and you better get it done within so many weeks after a timely jury demand is made, that's a horse of a different color. And in those circumstances, certainly I think the prosecutor, the people's representative, it would be incumbent upon that person to say, Your Honor, hey, we know the law here of the Supreme Court has spoken. Let's not wait 97 days. So I think that is relevant. There is, in fact, nothing in the record as to why there was so much delay. But one of the reasons for that is that the respondent, neither the respondent nor his counsel said, Your Honor, can we do something sooner here? He had been in custody for, I guess, seven years straight. So the idea that a jury was going to somehow find him in light of all this evidence not subject to voluntary admission may have been a bit of a wishful thinking here. But the key point here is that if this problem is flagged to the circuit court's attention in a timely fashion, there are alternative remedies that will fulfill the purpose of Section 3-800. And accordingly, it is, we believe, not proper to interpret that provision as impliedly having a mandatory consequence of automatic nullification. The legislature should not be assumed to have intended that by silence when they know how to express that type of consequence, where for this type of provision, it's not one where the injury that the statute intends to prevent is one that's unrelated to the ultimate outcome of the case. If, unless the court has any other questions, we advert to the additional arguments made in our briefs, and we urge the court to reverse the appellate court's holding, either based upon the waiver or forfeiture grounds, or because of the question regarding when a jury demand must be made to have the unqualified right of the respondent to have a jury. And finally, with respect to the issue of whether Section 3-800 should be interpreted as mandatory or instead as directory. It's always an obligation. We're not disputing that. The question is, what should be the consequence from that when the legislature has not said that it's a per se reversible error in a situation where the respondent makes no complaint until he brings an appeal? Thank you so much, Your Honors. Thank you. Thank you, Mr. Hosek. Thank you, Ms. Goldman. Case number 114483 will be taken under advisement as agenda number one. The counsel are excused.